Gkeen, J.
delivered the opinion of the court.
The defendant Wiggins proved a preference right to the south-west quarter of the thirty-fourth section of the second fractional township south, in the second range east of the basis line in the Ocoee District; on the 5th of August, 1839, he made an entry of said quarter, and obtained a grant the 17th of September.
Henry Pike also proved a right of occupancy for the same quarter section, which he transferred to the complainant John Kennedy, who tendered a location and the requisite sum of money therefor to the entry taker the 17th of August, 1839; which was refused by the entry taker, on the ground that the same land had been previously entered by Wiggins. Kennedy thereupon filed this bill, alledging that Wiggins had no right of occupancy to the land in question; but that Pike, his assignor, *126 was the true occupant; and praying that the legal title which Wiggins had acquired be vested in the complainant, on the payment of the purchase money, expenses, &c.
1. Our first enquiry is, whether Wiggins was entitled to enter the land in controversy, as an occupant. /
The act of 1837, ch. 2, confers a right of preference or priority of entry on every person (except Cherokee Indians) who was “in the actual possession of, and residing upon any piece of vacant and unappropriated land in the Ocoee District,” at the time of the passage of that act.
The only question then is, whether the defendant was in possession of, and residing on the land in controversy on the 29th of November, 1837, the day the act was passed.
The whole body of evidence concurs in establishing the fact, that at the time of the passage of the act, Wiggins’s residence was in McMinn county, some forty miles from the land in dispute. Some time in 1836, he had caused an improvement to be made at the place in controversy, by clearing a field and building some cabins; and he brought to the place, whisky, bacon and flour, which he kept there for sale. Much of his time was occupied at this place in vending these articles; and when he would return to McMinn county, where he had a farm, on which his family continued to reside, other' persons were employed to sell for him; and thus, by means of his agents, stock and property, he continued in possession of the premises, until after the passage of the law disposing of the Ocoee lands. But although thus in possession, his residence was never changed from McMinn. His family continued there, the bulk of his property was there, and his own time was passed alternately at the one place and then at the other. To reside, means to dwell permanently, or for a length of time, to have a settled abode for a time. Now there can be no doubt but that the domicil, the settled abode, the residence of Wiggins, on the 29th of November, 1837, was in McMinn county, where his family then were: and he himseif so considered it; for in 1838, being summoned as a garnishee before a magistrate in the neighborhood of this improvement, he claimed his attendance as a witness in the cause as an inhabitant of McMinn county. *127 As Wiggins had no personal residence on the place in controversy, the fact of his possession of the place by agents, servants, or tenants, could give him no right of occupancy which would confer a preference of entry. The act of assembly confines the benefit to him who was a personal resident, and does not confer it upon the mere possessor of land. The residence, therefore, of servants, or agents, conferred no preference of entry on the principal.
2. The next question is, whether Henry Pike, under whom the complainant claims, was entitled to a preference of entry by virtue of his residence on the land.
It appears from Wiggins’s answer, and from the proof, that Pike was employed by Wiggins in 1837, to live on the place in controversy, and sell his provisions for him, when he was absent; and that Pike cultivated a field of six acres that he rented from Wiggins. Pike, with his family, -was thus residing on the land when the- law of 1837 passed. It is plain, therefore, that he was residing on the land, within the-letter of the law; and so far as all others (except Wiggins) were concerned, he was clearly entitled to a preference of entry: nor could his relation to Wiggins, as tenant, affect his right. Before the passage of the act to dispose of these lands, all persons residing on them were trespassers on the public domain; but the State chose to confer a benefit upon those who were thus residing and in possession, by giving them a preference of entry. Those who were not residents were excluded. It is clear, therefore, that the existence of the right on the part of him who was a resident, could not affect the rights of him who was not a resident. Wiggins not being a resident, had no right of occupancy; and therefore his rights could not at all be affected by the fact, that Pike claimed a right of occupancy. There was therefore no bad faith towards Wiggins in setting up this claim by Pike, that should repel him or his assignee from this court. In order that the principle insisted on should have application, it is necessary that Pike should have violated some, obligation of honor, of faith, of allegiance, toward Wiggins. But this cannot be the case, seeing that Pike’s claim interferes with no benefit Wiggins could have derived under the law. *128 We therefore think the complainant was entitled to a preference of entry as Pike’s assignee, and that the legal title should be devested out of Wiggins and vested in him on the payment of the purchase money and expenses, and the value of Wiggins’s improvements. Affirm the decree.
Note. — Occupancy—Possession—Residence.—Green, J. delivered the following opinion in the case of Kenner vs Montcastle and others, at this term.
In this case, the question that embarrassed the Chancellor, and which constituted the issue submitted by him to the jury, is, whether the complainant was in possession of, and residing on the land in controversy, when the law passed to dispose of the Ocoee lands, in his own right and for himself, or as the servant of Montcastle. The 5th section of the act of 1837, ch. 2, requires, that a party, to be entitled to a right of occupancy, should have had both possession of and residence on the land at the time of the passage of the act. Neither possessioii nor residence taken alone will do. Both must concur, A party may have been in possession by his slaves or servants, and not a resident, in which case he was not entitled to a preference of entry. So he may have been resident on an improvement as the servant of another; in which case he would not be possessor, and consequently not entitled to aright of occupancy. A servant acting as such, and laboring on wages for another, cannot be said to be in possession of the ' farm on which he labors. It would be different if he were a tenant, as was the case with Pike, in Kennedy vs. Wiggins. In that case, Wiggins had rented six acres of the-land to Pike; who being thus in possession for himself, though as Wiggins’s tenant, was held to be entitled to an occupancy. In this case, the jury found that the complainant was in possession of the land in his own right, and residing thereon at the time the law-passed. The Chancellor decreed in accordance with this verdict; and we think the weight of the evidence is in favor of the decree. Kenner and Montcastle were partners in merchandise, doing business in a storehouse on the quarter section in controversy. Kenner was a young man without family, did business in the store during the day, and slept in the storehouse at night; but he ate his meals at the house of Montcastle. We think the facts constitute him a resident at the store. He certainly had a residence; and if the store was not the place, the house of Montcastle must have been. But shall we say that a place where he spends a half hour three times a day, merely to take his food, shall be his residence; and that the place where all his work during the day is performed, and where he sleeps during the night, is not Ins residence? This cannot be insisted upon. The argument then that denies him a residence at the store, in effect denies him any residence whatever. But it is said, Montcastle sold this improvement as partnership property. We think a right of occupancy cannot exist in partnership; thatMontcastle as partner had no right to dispose of Kenner’s rights, acquired by his personal residence and possession of the storehouse; and that, as Kenner refused to join in the sale, his rights are not prejudiced thereby; nor has he been guilty of any bad faith towards tlie purchaser, that shall repel him from a court of chancery.
Bradford and Torbet, for complainant,
Van Dyhe and Gaut, for defendant.